UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| v. | § | CRIMINAL NO. 2:18-74 |
| | § | CIVIL NO. 2:18-458 |
| PEDRO CASANOVA GOMEZ, | § | |
| Defendant/Movant. | § | |

## MEMORANDUM OPINION & ORDER

Defendant/Movant Pedro Casanova Gomez filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. D.E. 38.[1] Pending before the Court is the United States of America's (the "Government") Motion for Judgment on the Record (D.E. 47), to which Movant has responded (D.E. 48).

### I. BACKGROUND

On January 8, 2018, Movant drove a refrigerated tractor-trailer into the Falfurrias Border Patrol Checkpoint for an immigration inspection. After a service canine alerted to the presence of contraband in Movant's trailer, Border Patrol agents signaled him to the secondary inspection area. The first thing agents discovered was that the trailer was secured with a fake seal. They removed the fake seal and inspected the trailer, where they discovered two undocumented aliens hidden among a load of produce. The temperature inside the trailer was 54 degrees, and agents had to remove a pallet of produce with a forklift before they could extract the aliens from the trailer. Once outside, the aliens told agents they were in the United States illegally. The trailer's original seal was located inside the tractor's cab. Movant and his passengers were then arrested.

---

1. Docket entries refer to the criminal case.

1

On March 19, 2018, Movant pled guilty to transporting an undocumented alien in violation of 8 U.S.C. § 1324 pursuant to a written Plea Agreement (D.E. 17). In return for his guilty plea, Movant waived his right to appeal or file a motion under 28 U.S.C. § 2255, except to raise a claim of ineffective assistance of counsel. Movant testified at rearraignment that he understood the waivers contained in the Plea Agreement and had discussed them with counsel.

The Presentence Investigation Report (PSR, D.E. 24) assigned Movant a base offense level of 12. Six levels were added under U.S.S.G. § 2L1(b)(6) because the offense involved the reckless creation of a substantial risk of death or serious bodily injury, and two levels were added under U.S.S.G. § 3B1.3 because Movant used a "special skill"—his commercial truck driver's license—to facilitate the commission of the offense. Movant was given a three-level adjustment for acceptance of responsibility. The resulting advisory guideline range for Level 17, Criminal History Category I, was 24–30 months' imprisonment. Movant was sentenced to 26 months' imprisonment, 2 years' supervised release, and a $100 special assessment. After pronouncing its sentence, the Court reminded Movant that he had waived his right to appeal.

Judgment was entered June 25, 2018. Consistent with the provisions of his Plea Agreement, Movant did not appeal. His conviction became final on July 9, 2018, the last day on which he could have filed a notice of appeal. He filed the current motion under 28 U.S.C. § 2255 on December 17, 2018. It is timely.

## II. MOVANT'S ALLEGATIONS

Movant raises three claims alleging ineffective assistance of counsel:

- A. Counsel failed to adequately consult with Movant regarding his appellate rights or file a notice of appeal after Movant instructed him to do so;

- B. Counsel failed to object to the PSR's recommended two-level enhancement under U.S.S.G. § 3B1.3 based on Movant's use of his special skill as a commercial truck driver in the commission of the offense; and

C. Counsel failed to object to the PSR's recommended six-level enhancement under U.S.S.G. § 2L1(b)(6) because the offense involved the reckless creation of a substantial risk of death or serious bodily injury.

**III. ANALYSIS**

**A. 28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

**B. Ineffective Assistance of Counsel**

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his or her counsel's performance was both deficient and prejudicial. *Id*. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of

hindsight." *Strickland*, 466 U.S. at 689. An ineffective assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id*. at 689–90. With regard to the prejudice requirement, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim." *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997). "A court need not address both components of the inquiry if the defendant makes an insufficient showing on one." *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994).

## IV. ANALYSIS

### A. Failure to Perfect an Appeal

Movant originally claimed that his counsel, Attorney Gabriel R. Salais ("Counsel"), failed to fully inform him "of all material consequences of not appealing." D.E. 38, p. 14. Specifically, Counsel failed to inform Movant that "if he did not file a direct appeal, then he forfeited or waived any future challenge to the conviction or sentence." *Id.* Counsel also did not explain that Movant would be appointed new counsel and his transcripts would be provided free of charge. Finally, Counsel "did not explain how retroactively applicable rules are to be presented" and that, if Movant did not appeal, "then he foreclosed his ability to raise certain meritorious challenges in the future." *Id.* Instead, when Movant told Counsel he did not believe the two-level special skills enhancement was fair, Counsel responded that there was nothing to appeal and that Movant had waived his right to appeal. In response to the Government's motion for judgment on the record, Movant claimed for the first time that he told Counsel he wanted to appeal his sentence, but Counsel failed to file

4

a notice of appeal.

### 1. Evidentiary Hearing

The Court held an evidentiary hearing on this claim, during which Movant and Counsel testified. 10/3/2019 § 2255 Hrg. Tr., D.E. 57.

Movant testified on direct examination that he never saw or spoke to Counsel from the time they met at Movant's arraignment hearing on January 29, 2018, until the day of his rearraignment hearing on March 19, 2018. He and Counsel never went over the Plea Agreement together before he pled guilty; Movant just came in the day of rearraignment and signed some papers because "[t]here was no time. Court started quickly." § 2255 Hrg. Tr. at 7:5. Movant stated that he and Counsel never discussed his appellate rights before he pled guilty, and Counsel never told him that by signing the Plea Agreement he would be waiving his right to appeal. Instead, Counsel told Movant that the judge would ask him some questions, and he was "to just say yes to everything." *Id.* at 8:14.

Before sentencing, Movant called Counsel to discuss his PSR. Counsel did not tell Movant that he had waived his right to appeal during this conversation or at any time before or after Movant was sentenced. Movant called Counsel roughly two days after sentencing to ask "if there was anything that could be done to appeal regarding [his] sentence about the points." *Id.* at 10:18-19. Counsel responded via text message that "there was nothing to do, that [Movant] had accepted [his] guilt." *Id.* at 10:20-21. Counsel did not tell Movant that he could have appealed, but that he would have been breaking the terms of the Plea Agreement. When asked directly if he informed Counsel he wanted to appeal, Movant stated, "Yes, if there was something that could be done about my case, about the sentence that I had received because he had offered me—he had told me that it was going to [be] a year . . . ." *Id.* at 11:7-11. On cross-examination, Movant testified that he called

Counsel two days after sentencing and told him affirmatively that he wanted to appeal his sentence. He did not call Counsel again after that day "because [Counsel] told [him] there was nothing that could be done anymore." *Id.* at 15:25–16:1.

Counsel testified that he met Movant the day Movant was arraigned and called him on March 7, 2018, after he had reviewed discovery. During this conversation, they discussed the Government's evidence—including Movant's prior confession—and how it would be better for Movant to plead guilty and receive credit for acceptance of responsibility. They spoke again the following day and discussed how the Sentencing Guidelines would be applied. They also discussed the Plea Agreement paragraph by paragraph, including the appellate waiver contained in Paragraph 7, and Movant acknowledged that he understood. Movant was unhappy with his anticipated Guideline range of 24–30 months and asked if he could get a sentence of probation, but Counsel informed him this was not an option due to his prior criminal history. Counsel never promised Movant a sentence of probation or only one year of imprisonment. The day of the rearraignment hearing, Counsel and Movant met outside the courthouse and again went over the Plea Agreement together. He told Movant not to lie about anything, "[s]o when he says I whisked him in and told him just to say yes, that's not true." *Id.* at 27:11-12.

Movant called Counsel "a lot" after Probation completed the PSR, and the two men "talked many times about his PS[R] because [Movant] wasn't satisfied with the two-level [special skills] enhancement." *Id.* at 19:17-22. When they reviewed the PSR together, Counsel also went over Movant's right to appeal. Counsel testified that he "always make[s] it a custom" to review a client's appellate rights "in order to cover [himself]," because a previous client once claimed Counsel failed to go over their appellate rights. *Id.* at 28:10-13. "[E]very time I talk to whatever defendant, I always tell them their appellate rights, the issues they're going to have if the sentence they get,

they don't like. . . . I always tell them that, and I told him that," Counsel testified. *Id.* at 28:15-19.

Counsel and Movant spoke immediately after sentencing, but Movant did not tell Counsel he wanted to appeal. Movant called Counsel a couple days after sentencing because he was unhappy with his sentence, specifically the two-level special skills enhancement. He did not tell Counsel he wanted to appeal, but instead asked if Counsel could "do something to reduce his sentence." *Id.* at 30:8-9. Counsel explained that there was case law "on point" as to why the special skills enhancement was properly applied, and "the only way [he] could see the sentence being reduced was if [Movant] cooperated in any manner," which Movant "never wanted to do from the start, so that didn't happen." *Id.* at 21:19–22:1. He also told Movant that he could appeal his sentence; however, he signed the Plea Agreement, and "if he appealed, [ ] the government would file something saying that he waived it." *Id.* at 32:10-11. Counsel discussed with Movant the advantages of an appeal in light of the waiver and the fact that there were no meritorious issues to raise on appeal, and it was Counsel's professional judgment that an appeal would have been futile.

Having considered the testimony and demeanor of both witnesses, the Court finds that Counsel was credible, while Movant was not. Movant's testimony was also in direct contradiction with his sworn testimony at rearraignment[2] and with statements he made under penalty of perjury in his § 2255 motion and Reply Brief.[3]

---

2. Movant testified at rearraignment that Counsel read and explained the Plea Agreement to him paragraph by paragraph, and that he understood its terms. Rearraign. Tr. at 13:1-6. He testified that he was aware of the waiver provision in Paragraph 7 of the Plea Agreement before he signed it, and that he understood that by signing the agreement, he waived not only his right to a direct appeal, but also his right to file a motion under § 2255. *Id.* at 13:11–14:6. He stated he specifically discussed the waiver with Counsel, he "understood all about the waiver of appeal," and he did not have any questions he wanted to ask the Court about the waiver. *Id.* at 14:19–15:6. Finally, Movant testified that he understood how his sentence would be calculated, and that no one had promised him anything to get him to plead guilty. *Id.* at 13:17-10, 18:4-8. Movant's sworn testimony in open court is entitled to a strong presumption of truthfulness. *See United States v. Lampaziane*, 251 F.3d 519, 524 (5th Cir. 2001) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (statements made under oath in open court "carry a strong presumption of verity" and create a "formidable barrier" in subsequent proceedings)).

3. Movant repeatedly stated at the § 2255 evidentiary hearing that Counsel never told him he had waived his right to appeal, either before or after sentencing. However, his § 2255 motion states, "Before and after sentencing,

## 2. Failure to File Notice of Appeal

The law is clear that if a defendant requests that counsel file a notice of appeal, counsel's failure to do so constitutes ineffective assistance, entitling the defendant to an out-of-time appeal. *Roe v. Flores–Ortega*, 528 U.S. 470, 477 (2000). As the Fifth Circuit held in *Tapp*, if a defendant "is able to demonstrate by a preponderance of the evidence that he requested an appeal, prejudice will be presumed and [he] will be entitled to an out-of-time appeal, regardless of whether he is able to identify any arguable meritorious grounds for appeal . . . ." *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007).

The Court finds that Movant did not instruct Counsel to file a notice of appeal.

## 3. Failure to Adequately Consult with Movant Regarding Appeal

In cases where the defendant fails to instruct counsel to file a notice of appeal, the court must determine "whether counsel in fact consulted with the defendant about an appeal." *Flores–Ortega*, 528 U.S. at 478. To "consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* The Supreme Court has held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. "Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal." *Id.* "[T]o show prejudice

---

defense counsel told [Movant] that there was nothing to appeal *and that he had waived his right anyway*." D.E. 38, p. 14 (emphasis added). Movant's Reply Brief similarly states that when he "told his attorney that he was not happy with the sentence," Counsel "*stated to [Movant] that he had waived his right to appeal* and relief under 28 U.S.C. § 2255 in the plea agreement." D.E. 48, p. 4 (emphasis added).

8

in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484.

Counsel testified that he reminded Movant after sentencing that he had waived his right to appeal, and if Movant appealed, the Government would seek to enforce the waiver. This advice was reasonable, given that the Fifth Circuit routinely enforces waivers of appeal so long as the waiver was knowing and voluntary. *See, e.g.*, *United States v. Kelly*, 915 F.3d 344, 350 (5th Cir. 2019). Indeed, the court has gone so far as to warn counsel that "pursuing an appeal contrary to a valid waiver and without responding to the Government's invocation of the waiver is a needless waste of judicial resources and could result in sanctions." *United States v. Hicks*, 746 F. App'x 419 (5th Cir. 2019) (citing *United States v. Gaitan*, 171 F.3d 222, 223–24 (5th Cir. 1999) ("IT IS ORDERED that, as a sanction for pursuing this appeal contrary to the waiver, [counsel] shall not receive any payment for services rendered and expenses incurred in this appeal.")).

Movant testified that he wanted to appeal the two-level enhancement under U.S.S.G. § 3B1.3 based on his employment of a special skill as a commercial truck driver in the commission of the offense. In response, Counsel informed Movant that case law on the issue was not in Movant's favor. As set forth *infra*, Counsel was correct, and this enhancement was properly applied. To the extent Counsel advised Movant there were no non-frivolous issues that he could raise on appeal, this advice was reasonable.

Movant's complaint that Counsel failed to inform him that "if he did not file a direct appeal, then he forfeited or waived any future challenge to the conviction or sentence" based on any future "retroactively applicable" rules is also without merit. Movant is not forever barred from challenging his conviction or sentence if there is a change in law. For example, he may move the

Court for a sentence reduction if his sentencing range is subsequently lowered by the Sentencing Commission. *See* 18 U.S.C. § 3582(c)(2). He may also challenge his conviction or sentence in the event a "right [is] newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *See* 28 U.S.C. § 2255(f)(3). While Movant did waive his right to file a § 2255 motion under most circumstances, courts in this district have declined to enforce such waivers where a retroactively-applicable rule would render a defendant's sentence unconstitutional. *See, e.g.*, *United States v. Garner*, No. 2:14-CR-798, D.E. 57 (S.D. Tex. Sept. 25, 2017) (granting motion to vacate sentence under *Johnson* despite waiver of right to appeal); *United States v. Sosa-Uraga*, 2017 WL 3605235, at *3 (S.D. Tex. Aug. 22, 2017) ("The Court finds that Sosa-Uraga's plea agreement and his waiver of § 2255 rights contained therein are valid and enforceable; however, the Court must determine whether his claim of an illegal sentence vitiates the plea agreement waiver as to his *Johnson* claim.") Finally, "a § 2241 petition that attacks custody resulting from a federally imposed sentence may be entertained under the savings clause of § 2255 if the petitioner establishes that the remedy provided under § 2255 is inadequate or ineffective to test the legality of his detention." *Padilla v. United States*, 416 F.3d 424, 426 (5th Cir. 2005).

The Court finds that Counsel adequately consulted with Movant regarding an appeal, the advice Counsel rendered was reasonable, and no rational defendant would want to appeal under the circumstances of this case. Counsel was not ineffective for failing to file an appeal on Movant's behalf. This claim is denied.

### B. Failure to Object to Special Skills Enhancement

Movant claims Counsel was ineffective for failing to object to the PSR's recommended

two-level enhancement under U.S.S.G. § 3B1.3 based on his employment of a special skill as a commercial truck driver in the commission of the offense.

The Fifth Circuit has repeatedly held that the application of the special skills enhancement under § 3B1.3 is not erroneous where a commercial truck driver transports aliens in his semi-truck's trailer. *United States v. Villafranca*, 844 F.3d 199, 200 (5th Cir. 2016) (finding "the ability to drive a tractor trailer truck as evidenced by the possession of a commercial driver's license constitutes a special skill for purposes of § 3B1.3"); *United States v. Gill*, 642 F. App'x 323, 326 (5th Cir. 2016) (transportation in the truck's trailer "gave the appearance that he was hauling a legitimate load and made it much more difficult to identify the aliens"); *United States v. Gonzalez*, 627 F. App'x 381, 382 (5th Cir. 2015) ("These special skills significantly facilitated Gonzalez's commission of the offense because the aliens were secreted in the tractors that Gonzalez was towing, which Gonzalez would have been unable to do absent his commercial driver's license and his years of experience.").

Like the defendants in *Villafranca*, *Gill*, and *Gonzalez*, Movant was found with undocumented aliens concealed with a legitimate load of cargo in the back of a tractor trailer, which he was able to drive due to his special training as a commercial truck driver. Counsel was not ineffective for failing to object to the special skills enhancement. Movant's claim is denied.

### C. Failure to Object to Reckless Endangerment Enhancement

Finally, Movant claims Counsel was ineffective for failing to object to the PSR's recommended six-level enhancement under U.S.S.G. § 2L1(b)(6) because the offense involved the reckless creation of a substantial risk of death or serious bodily injury.

The commentary to U.S.S.G. § 2L1(b)(6) explains:

> Application of Subsection (b)(6).—Reckless conduct to which the adjustment from subsection (b)(6) applies includes a wide variety of conduct (e.g., transporting

persons in the trunk or engine compartment of a motor vehicle, carrying substantially more passengers than the rated capacity of a motor vehicle or vessel, or harboring persons in a crowded, dangerous, or inhumane condition).

U.S.S.G. § 2L1.1, comment. (n. 5).

In *Mata*, the Fifth Circuit summarized the test to be applied:

The application of § 2L1.1(b)(6) "requires a fact-specific inquiry" because the reckless endangerment enhancement is intended to apply to "a wide variety of conduct." "[A] single, brightline test is not necessarily appropriate for a guideline that must be applied to [the] wide variety of factual settings" in which defendants transport aliens for financial gain. Accordingly, we have articulated a nonexclusive list of five factors to guide district courts in their application of § 2L1.1(b)(6): "the availability of oxygen, exposure to temperature extremes, the aliens' ability to communicate with the driver of the vehicle, their ability to exit the vehicle quickly, and the danger to them if an accident occurs." . . .

Out of this fact-bound area of the law a few guiding principles have emerged. As to the fourth factor, we have affirmed the enhancement in situations in which it would have been difficult for the alien to extricate herself from the vehicle in the event of an emergency because the alien was jammed into a compartment or wedged into a tight space. We have also upheld the imposition of the enhancement where the aliens, who were being transported in a van, were completely surrounded by boxes "practically piled up to the top of the van" that were too big for the aliens to easily move. As to the fifth factor, the enhancement is proper only if the aliens would be in greater danger if an accident occurred than "an ordinary passenger not wearing a seatbelt in a moving vehicle." As a result, the mere fact that an alien is transported in a portion of the car that is not designed to hold passengers is not, without more, sufficient to support the enhancement.

*United States v. Mata*, 624 F.3d 170, 174 (5th Cir. 2010) (citing *United States v. Garza*, 587 F.3d 304, 309 (5th Cir. 2009); *United States v. Zuniga-Amezquita*, 468 F.3d 886, 889 (5th Cir. 2006); *United States v. Rodriguez-Mesa*, 443 F.3d 397, 403 (5th Cir. 2006); *United States v. Solis-Garcia*, 420 F.3d 511, 516 (5th Cir. 2005); *United States v. Dixon*, 201 F.3d 1223, 1233 (9th Cir. 2000)).

Transporting aliens in a manner that significantly hinders their ability to exit the vehicle quickly creates a substantial risk of death or serious bodily injury. *Zuniga-Amezquita*, 468 F.3d at 889. An adjustment is warranted if, in the event of an accident, the method of transportation

exposes the aliens to a substantial risk of death or serious bodily injury. *Id.* However, the risk must be greater than of an ordinary passenger not wearing a seatbelt in a moving vehicle. *Id.* at 890.

Here, the PSR set forth the basis for this enhancement as follows:

> The two undocumented aliens were inside the box trailer that is not made to transport people, but goods and other item[s]. The trailer has no passenger seating with a restraint system for passengers and if an accident would occur, the aliens could be crushed by the pallets of produce inside the trailer. The agents had to utilize a forklift to remove the first pallet, so the undocumented aliens could be extracted from the trailer. This places the individuals at risk of death or serious bodily injury. In addition, the cellphones were taken from the undocumented aliens which would prevent them from calling for assistance in case of an emergency.

PSR, ¶ 15.

All of the factors set forth in *Mata* except for factor one (the availability of oxygen) weighed in favor of applying the reckless endangerment enhancement. Counsel was not ineffective for failing to object to this enhancement. This claim is denied.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Movant has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." RULE 11, § 2255 RULES.

A certificate of appealability (COA) "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable

or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483–84).

Based on the above standards, the Court concludes that Movant is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## VI. CONCLUSION

For the foregoing reasons, the Government's Motion for Judgment on the Record (D.E. 47) is **GRANTED**; Movant's motion under 28 U.S.C. § 2255 (D.E. 38) is **DENIED**; and Movant is **DENIED** a Certificate of Appealability.

It is so **ORDERED** this 16th day of October, 2019.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE